**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

IN RE: EUGENE A. HEIGHT,   BANKR. CASE NUMBER: 10-46169
                           HONORABLE STEVEN W. RHODES

        Debtor.

_____/

FIVE STAR LASER, INC.,
a Michigan corporation, and
THOMAS J. GRZYWACZ, JR.,

        Plaintiffs,   CASE NUMBER: 10-14415
                                HONORABLE VICTORIA A. ROBERTS
v.

EUGENE A. HEIGHT,

        Defendant.

_____/

## ORDER

### I.   INTRODUCTION

Creditors and plaintiffs, Five Star Laser ("Five Star") and Thomas J. Grzywacz, appeal the decision of bankruptcy judge Steven W. Rhodes granting Height's motion to dismiss their complaint to determine a debt as non-dischargeable pursuant to 11 U.S.C. § 523(a)(2), (4), and (6).  The bankruptcy court held that the complaint was untimely under Fed. R. Bankr. P. 4007(c) because the stipulation between Height and the bankruptcy trustee extending the deadline for filing a complaint ("bar date") applied only to the trustee, not to creditors.  (Doc. # 1).  The court further held that the defenses of waiver, equitable tolling, and estoppel did not apply.  (*Id.*).

1

The facts and legal arguments are adequately presented in Plaintiffs' Brief on Appeal; the decision process would not be significantly aided by oral argument. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), Plaintiffs' appeal will be decided on the briefs and without oral argument.

The Court **AFFIRMS** the bankruptcy court's Opinion Granting Motion to Dismiss Complaint.

## II.   BACKGROUND

Defendant debtor Eugene Height filed a Chapter 7 bankruptcy petition on February 28, 2010.  At that time, Plaintiff creditors Five Star and Grzywacz had a complaint against him and his now defunct company, Pro-Form, Inc., in Macomb County Circuit Court alleging breach of fiduciary duties, usurpation of Five Star's business and conversion of its corporate assets, and common law fraud.

After Height filed for Chapter 7 relief, the meeting of creditors was scheduled for April 14, 2010.  The deadline to file complaints objecting to the discharge of debts or to determine dischargeability of debt was set for June 14, 2010 ("original bar date").  The meeting of creditors continued several times.  On May 26, 2010, the bankruptcy court entered a stipulated order between the bankruptcy trustee and the debtor.  The order was drafted on a boilerplate form by the trustee, and reviewed by the debtor's attorney. Plaintiffs had no part in the stipulation and were not parties to the agreement; they argue, however, they were third-party beneficiaries of it.

The May 26 order extended certain "bar dates" by 30 days, from June 14, 2010 to July 14, 2010 ("second bar date").  The meaning of the May 26 order, and the

intentions of the debtor, trustee, and court in entering the order are at the center of this dispute. The order reads:

### STIPULATION ADJOURNING FIRST MEETING OF CREDITORS AND EXTENDING BAR DATES

Now comes the parties and having stipulated to the following:

1. That the First Meeting of Creditors pursuant to 11 U.S.C. § 341 is adjourned to the **26th day of May, 2010 at 8:15 a.m.**
2. That the deadline to file objections to exemptions is extended thirty days from the original date.
3. That the deadline to file a complaint objecting to the discharge of the Debtor(s) under 11 U.S.C. § 727 or to determine the dischargeability of certain debts under 11 U.S.C. § 523 is extended thirty days from the original date.
4. That to the extent that notice has been given to creditors that this is a no-asset case, that (sic) the bar date for filing claims is extended thirty days from the original date.
5. That the Debtor(s) shall serve a copy of this Order upon all creditors and parties in interest within five (5) days from the date of entry, and file proof of service of same.
6. That these deadline extensions apply to the trustee only.

Plaintiffs, believing the stipulated order extended their deadline to file a complaint to determine dischargeability of debts, filed their complaint to determine a debt as non-dischargeable under 11 U.S.C. § 523(a)(2), (4), (6) on July 13, 2010. In Height's motion to dismiss their complaint, he argued it was untimely because the second bar date applied to the trustee only, not the creditors. A motion hearing was held and on October 26, 2010, the bankruptcy court granted Defendant's motion to dismiss; it found that the extension applied only to the trustee and that Plaintiffs' complaint was untimely. On December 20, 2010, Plaintiffs appealed the bankruptcy court's decision to this Court.

**III.    ARGUMENTS**

In arguing that the bankruptcy court erred in concluding that the May 26, 2010 stipulation extended the trustee's bar date only, Plaintiffs highlight the ambiguous language of the stipulation, which purports to extend the deadline to file a complaint to determine the dischargeability of certain debts under 11 U.S.C. § 523. Such a complaint can only be filed by creditors and debtors under Federal Rule of Bankruptcy Procedure 4007(a). (Doc. # 5 at 7-8).

The stipulated order refers to "bar dates," plural, and Plaintiffs say these dates must apply to creditors for that reason. (*Id.* at 9). They say Height was ordered to serve a copy of the stipulation on all creditors and this requirement was superfluous if the stipulation did not apply to them. (*Id.*). Plaintiffs acknowledge that the order's sixth paragraph says the deadline extensions apply only to the trustee, but argue this paragraph creates an ambiguity when read with the rest of the order. They say the order should be construed against the drafting parties, the trustee and Height. (*Id.* at 10-11, 18-20). Plaintiffs say the bankruptcy court erred by ignoring the first five paragraphs of the order, which were the result of the trustee's "sloppy" drafting and Height's oversight in accepting the boilerplate form without carefully reading it. (*Id.* at 10, 20).

Plaintiffs contend the bankruptcy court erred in determining the intent of Height and the trustee in entering into the stipulation "because no thinking went into either the drafting of the stipulation or in submitting it to the bankruptcy court for entry as an order." (Doc. # 5 at 14). They claim they were third-party beneficiaries to the stipulation because creditors are explicitly mentioned three times, and implicitly mentioned twice. (*Id.* at 15-16).

4

In the alternative, Plaintiffs argue the bankruptcy court should have used its equitable power to grant them an extension and allow them to maintain their adversary complaint. (*Id.* at 23). In support, Plaintiffs allege they were "clearly misled by the wording of the May 26 order and by the PACER Deadlines\Hearing Schedule." (*Id.*)

## IV. ANALYSIS

### A. Standard of Review

In an appeal from a bankruptcy court order, the Court applies the clearly erroneous standard of review to the bankruptcy court's factual findings and reviews *de novo* the bankruptcy court's legal conclusions. *Stamper v. United States* (*In re Gardner*), 360 F.3d 551, 557 (6th Cir. 2004). The Court reviews the bankruptcy court's use of, or failure to use, its equitable power to grant relief, for an abuse of discretion. *Nardei v. Maughan* (*In re Maughan*), 340 F.3d 337, 344 (6th Cir. 2004).

### B. The Court will not reverse the bankruptcy court's reasonable interpretation of its own order.

Fed. R. Bankr. P. 4007(a) allows a debtor or creditor, but not a trustee, to file a complaint to obtain a determination of the dischargeability of a particular debt. The filing of the complaint is subject to the strict time limitations set forth in Rule 4007(c). The rule states, "a complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)." Fed. R. Bankr. P. 4007(c). Rule 4004(a), which sets forth the time for objecting to a discharge of all of the debtor's debts under 11 U.S.C. § 727(a), also establishes a 60-day deadline. Under this provision, both a creditor and a trustee can object. Under both provisions, the court may only extend the time to file a complaint on

the motion of an interested party, after hearing on notice, and for cause. *Id.* §§ 4004(b), 4007(c). The motion must be filed before the 60-day time period expires. *Id.* The trustee is a party in interest, and may move for an extension on behalf of himself, as well as one or more creditors. *See Brady v. McAllister* (*In re Brady*), 101 F.3d 1165,1170-71 (6th Cir. 1997).

Rule 9006(b)(3) provides that a court can only enlarge the time for taking action under Rules 4004(a) and 4007(c) to the extent, and under the conditions, stated in those rules. "Together, these rules prohibit a court from sua sponte extending the time in which to file dischargeability complaints." *Themy v. Yu* (*In re Themy*), 6 F.3d 688, 689 (10th Cir. 1993). "If a complaint is not timely filed, the debt is discharged." Adv. Comm. Notes, Fed. R. Bankr. P. 4007(c)

In *Brady*, the Sixth Circuit refused to reverse a bankruptcy court's interpretation of an order drafted by the trustee and entered by the court. There, the trustee moved to extend the date to file non-discharge complaints, saying, "'the Trustee states that he has not yet determined whether a non-discharge complaint is appropriate in this case but believes that by October 21, 1992 sufficient investigation and discovery of facts will have occurred to determine whether a non-discharge complaint is appropriate.'" *In re Brady*, 101 F.3d at 1167. The bankruptcy court entered an order submitted by the trustee, which read, "'the Trustee in bankruptcy for James A. Brady shall, on behalf of the estate and all unsecured or undersecured creditors of the estate, have through and including October 21, 1992 in which to file non-dischargeability complaints in the aforesaid case.'" *Id.* When the creditors filed a complaint on October 20, 1992, three months after the original bar date, the debtor moved to dismiss on grounds of

untimeliness. *Id.* The bankruptcy court denied the motion. *Id.* It held that its order extending the bar date to October 21, 1992 was intended to apply not only to the trustee, but to all creditors of the debtor's estate. *Id.* The district court affirmed. *Id.* at 1167.

On appeal to the Sixth Circuit, the debtor argued that the trustee's motion and the bankruptcy court's order applied only to the trustee because the motion "referred only to the trustee and to 'non-discharge complaints,' did not mention creditors, and did not state under which rule or statute the trustee was proceeding." *Id.* at 1169. The debtor also urged that the terms of the bankruptcy court's order "revealed a 'plain' intent to grant an extension of time only to the trustee, rather than to creditors." *Id.* Relying on the fact that the bankruptcy court stated that it intended the order granting deadline extensions to apply to creditors, the Sixth Circuit affirmed. *Id.* The Sixth Circuit acknowledged that both the trustee's motion and the bankruptcy court's order were ambiguous. *Id.* However, the Sixth Circuit held that the bankruptcy court's interpretation of its own order should stand. *Id.*

*Brady* makes clear that an ambiguity created by the drafter and/or by the bankruptcy court does not automatically entitle an aggrieved party to relief, and that a reasonable interpretation by the bankruptcy court of its own order should stand.

The reasonableness of the bankruptcy court's interpretation of the stipulated order is bolstered by a review of Rule 4007(c), and of case law applying that rule. In *Ellsworth Corp. v. Kneis* (*In re Kneis*), No. 08-02208, 2009 WL 1750101 (Bankr. D.N.J. June 15, 2009), the debtor moved to dismiss the creditor's non-dischargeability complaint, filed 30 days after the original bar date. 2009 WL 1750101, at * 1. The

creditor argued that a consent order between the trustee and the debtor, which extended the bar date by 30 days, applied to him as well. *Id.* at *1-*2. The consent order read, in relevant part, "'the deadline by which the Trustee may file a Complaint pursuant to 11 U.S.C. §§ 523 and 727 be, and is hereby extended to and including September 11, 2008.'" *Id.* at *2.

The bankruptcy court found that the extension did not apply to creditors:

> In the present case, the circumstances surrounding the Consent Order did not provide notice to the court and the debtor that a general extension was requested or demonstrate that cause existed for a general extension. As a result, the Consent Order does not state or suggest that a general extension was granted. Neither the Trustee's nor Plaintiff's actions provided notice that a general extension was requested and there is no indication whatsoever that the Debtor *consented* to a general extension. Significantly...the Plaintiff did not join in a motion for an extension or make known to the Court and the Debtor that it was also seeking an extension....Nor did the Trustee...file a formal motion that implied or expressly stated that the extension was on behalf of or for the benefit of other creditors....Further, the surrounding circumstances did not show cause to grant a general extension. In *Watkins*, the court found cause because the Trustee indicated an intention to conduct a Rule 2004 about potentially undisclosed assets during a hearing regarding an extension motion where all pertinent creditors were present. 365 B.R. at 578. These facts can be distinguished from the present case where the Plaintiff was not involved in seeking the Consent Order. Also, the Trustee in this case, as in *Demos*, did not file a formal motion suggesting that there were large numbers of creditors or that numerous interested parties would benefit from an extension. 57 F.3d at 1039. Rather, here this Court "cannot assume that the plaintiff also," like the Trustee "needed additional time and discovery in order to determine whether it had a valid basis for filing a complaint." 73 B.R. at 673. A showing of cause, as to the need for a general extension, was a prerequisite not demonstrated to this Court prior to granting the Consent Order. Finally, the Consent Order did not state or suggest that a general extension was granted. The Consent Order expressly restricted the extension to the Trustee.

*Id.* at *5 (citations omitted) (emphasis in original).

The order in *Kneis* was arguably ambiguous; it purported to extend the deadline

8

to file a complaint pursuant to section 523, which Plaintiffs here point out, can only be filed by creditors. The *Kneis* court acknowledged the ambiguity, but stated it was not enough to overcome "the duty of the Trustee and/or creditors to create surrounding circumstances that satisfy the notice and cause prerequisites for a general extension." *Id.*

Plaintiffs here did not establish the cause and notice prerequisites. At the hearing on Defendant's motion to dismiss, the bankruptcy court asked Plaintiffs why they failed to file their complaint by the original bar date. In response, they said they did not need additional time, the complaint was ready to be filed by the original bar date, but they believed they had until July 14, 2010 based on the stipulated order entered by the court. (9/27/10 Tr. 7). Moreover, while the first five paragraphs of the order could be construed to apply to creditors, the last paragraph explicitly and unambiguously states, "these deadline extensions apply to the trustee only." The surrounding circumstances do not indicate that the order provides a general extension. There was no demonstration of cause and notice; the order expressly restricts the deadline extension to the trustee. Consequently, the bankruptcy court's conclusion that Plaintiffs were not intended third-party beneficiaries to the stipulation is not erroneous.

**C.     As creditors, Plaintiffs had a duty to protect their interest in the debt.**

Plaintiffs rely heavily on the ambiguity created by the sixth paragraph of the May 26 order when read with the other five paragraphs; they suggest the bar date extension applied to creditors. However, the case law is clear that the Bankruptcy Code and its implementing rules are designed to protect debtors, and to provide them a financial

"fresh start" following the discharge of their debts, and that creditors with knowledge of bankruptcy proceedings must affirmatively act to protect their rights. *Walker v. Wilde* (*In re Walker*), 927 F.2d 1138, 1142, 1145 (10th Cir. 1991); *see also Neely v. Murchison*, 815 F.2d 345, 346 (5th Cir. 1987) ("[Departures in the bankruptcy rules] from past practice, as embodied in Rule 4007(c), evince a strong intent that the participants in bankruptcy proceedings be assured that, within the set period of 60 days, they can know which debts are subject to an exception to discharge."); *Woodson v. Tosenberger* (*In re Tosenberger* ), 67 B.R. 256, 259 (Bankr. N.D. Ohio 1986) ("The balance has tipped in favor of the fresh start policy and away from the uncertainties of excusable neglect in failing to timely object to discharge of a claim." (citations and internal quotation marks omitted)).

In *Walker*, the creditors did not receive the bankruptcy court's formal notice of bankruptcy filing, but nonetheless learned of the proceeding through another one of the debtor's creditors, well before the dischargeability bar date passed. 927 F.2d at 1140. The creditors contacted the bankruptcy court to verify the information but did not receive a response until after the bar date passed. *Id.* A Chapter 7 discharge of debts was issued, which included that particular creditor's claim. *Id.* The *Walker* court held that the creditors' actual knowledge of the debtor's Chapter 7 bankruptcy proceeding precluded them from objecting to dischargeability of their claim 15 months after the bar date passed. 927 F.2d at 1144-45 (citing 11 U.S.C. § 523(a)(3)(B) (fraud-based debt of a creditor will be discharged if the creditor has actual knowledge of the bankruptcy proceeding in time for timely filing of proof of claim and request for a determination of the dischargeability of a debt but does not so file)).

In *Neely v. Murchison*, 815 F.2d 345 (5th Cir. 1987), the Fifth Circuit reached the same conclusion. There, the bankruptcy court erroneously informed the creditor's attorneys that no dischargeability deadline had been set, and the creditor never received 30-day notice of the deadline from the court like he was supposed to under Rule 4007(c). 815 F.2d at 346. The creditor filed an objection to dischargeability ten days after the 60-day limitation period had run. *Id.* The bankruptcy court dismissed the creditor's claim as untimely; the district court and the Fifth Circuit affirmed. *Id.* The Fifth Circuit rejected the creditor's argument that the clerk's failure to give the 30-day notice suspended the running of the 60-day limitation period. *Id.*

> The court emphasized the creditor's duty to protect his own interest:
>
> [Section] 523(c) of the Code, which Rule 4007 is designed to implement, places a heavy burden on the creditor to protect his rights: a debt of the type presented here is automatically discharged unless the creditor requests a determination of dischargeability. The one narrow exception to this rule incorporates a duty-to-inquire approach to notice issues. Under § 523(a)(3)(B), a debt is not automatically discharged if the debtor fails to schedule the creditor *and* the creditor had no notice or *actual knowledge* of the case in time to file a claim and a request for determination of dischargeability.

815 F.2d at 347 (emphasis in original). The court concluded that although the creditor was not informed of the bar date, he knew of the bankruptcy proceeding and had a duty to inquire about the bar date to protect his rights. *Id.*; *see also DeLesk v. Rhodes* (*In re Rhodes*), 61 B.R. 626 (9th Cir. BAP 1986) (although neither creditor nor creditor's attorney received notice from the bankruptcy court of the deadline for filing a complaint to determine dischargeability, if they had reviewed the bankruptcy file upon learning of the proceeding, they would have had ample time to file a complaint before the bar date and their untimely complaint was properly denied).

If Plaintiffs had read the May 26 order in its entirety, they would have noticed the ambiguity and could have sought clarification from the bankruptcy court, Defendant, or the trustee. They could have also played it safe and filed the complaint by the original bar date; they said it was ready at that time. Plaintiffs had a special incentive to carefully and completely review the stipulated order; they admittedly played no part in drafting it, and were not parties to the agreement.

Because Plaintiffs did not "discharge[ ] their duty of inquiry," they cannot now complain about the bankruptcy court's failure to grant them an extension of the bar date or to read the stipulated order as granting them an extension. *In re Walker*, 927 F.2d at 1145 ("Here, the Higleys failed to take any number of actions that could have informed them of the April 12, 1987, bar date. Under these circumstances, we cannot agree that the Higley's discharged their duty of inquiry and are now entitled to challenge the discharge of their claim."); *Byrd v. Alton* (*In re Alton*), 837 F.2d 457, 461 (11th Cir. 1988) ("If Byrd, once warned of the bankruptcy proceeding, had made a minimal effort to determine the date of the filing of the petition, he would have realized the outside dates for the filing of his complaint contesting the dischargeability of his claim or for a motion to extend such time. Instead, appellant Byrd made no such effort and cannot now properly complain of the consequences of his inaction."); *In re Tosenberger*, 67 B.R. at 259 ("[E]quity aids the vigilant, not those who sleep on their rights. Creditors have a responsibility to timely act on their rights under the Bankruptcy Code, and not subject debtors to the uncertainties of excusable neglect in failing to timely object to discharge of a claim." (citation and quotation marks omitted)).

Some courts permit late filing to determine dischargeability where the bankruptcy

12

court has explicitly misled a creditor by setting an incorrect bar date. See, e.g., Nicholson v. Isaacman (In re Isaacman), 26 F.3d 629, 633-36 (6th Cir. 1994); Allred v. Kennerley (In re Kennerley), 995 F.2d 145, 148 (9th Cir. 1993) (citing Slimick v. Silva (In re Slimick), 928 F.3d 304, 309-10 (9th Cir. 1990)); In re Themy, 6 F.3d at 690. However, that did not happen here. Rather, the court's May 26 order was ambiguous, and therefore, implicitly misleading. In Slimick, 928 F.3d at 310, the Ninth Circuit said, "ambiguous or implicitly misleading conduct by courts does not release litigants from their appeal deadlines. If a party believes a court has acted ambiguously as to an appeal deadline, it bears the burden of seeking clarification."

Plaintiffs rely heavily on the Sixth Circuit's decision in Isaacman, but the facts of that case are readily distinguishable. In Isaacman, the Sixth Circuit held that the creditor's attorney reasonably relied on an erroneous second bar date communicated to counsel directly, by a clerk of the bankruptcy court's clerk's office, before the original bar date had passed. 26 F.3d at 633. The court found that the clerk's mistake should be imputed to the bankruptcy court because "[t]he clerk of the bankruptcy court and those who are under his or her direction are officials of the bankruptcy court itself." Id. at 634. The Sixth Circuit found that because the creditor reasonably relied on an explicit error of the bankruptcy court itself, the bankruptcy court abused its discretion by failing to exercise its equitable powers to permit the complaint to proceed. Id. at 636.

As an exhibit to their brief on appeal, Plaintiffs provide a PACER printout from the Bankruptcy record listing deadlines and hearings, that says "Objection to Discharge Due" on July 14, 2010, the second bar date. (Doc. # 5, Exh. 1). Plaintiffs contend they reasonably relied on this document. The document is misleading because it does not

specify that the extension applies only to the trustee. But, any misleading information on PACER does not rise to the level of explicit court error present in *Isaacman*; Plaintiffs' reliance on the document was unreasonable.

Bankruptcy rules make clear that there is a distinction between objections to a complete discharge of a debtor's debts, which can be made by a trustee and by creditors, and objections to dischargeability of a particular debt, which can only be made by a creditor to whom a debt is owed. *See* 11 U.S.C. §§ 4004, 4007. The PACER document says the "Objection to Discharge" is due on July 14; it makes no reference to the due date of an objection to dischargeability. The complaint the bankruptcy court found untimely was to determine that a debt is non-dischargeable, not an objection to a discharge. Thus, on its face, the PACER document sets a new deadline which appears not to apply to the type of complaint filed by Plaintiffs on July 13, 2010. Furthermore, in its order dismissing Plaintiffs' complaint, the bankruptcy judge noted that a May 26, 2010 docket entry provided: "Deadlines Updated FOR TRUSTEE ONLY...." Plaintiffs do not refute the existence of this entry nor have they established that the court's finding is clearly erroneous. The PACER document's wording, particularly in combination with the unambiguous language of both paragraph six of the stipulated order and the May 26, 2010 docket entry, triggered Plaintiffs' counsel's duty to inquire about the correct deadline for filing a non-dischargeability complaint.

The bankruptcy court found that Height did not intentionally mislead Plaintiffs into believing that the deadline extension applied to them. The court said: "The delay here was not due to any improper action on the debtor's part. It was due to the plaintiffs' failure to read the entire order, which stated that it applied to the trustee only." (Doc. # 1

14

at 6). This factual finding is not clearly erroneous and is entitled to deference. In a case factually more extreme than this one, the Eleventh Circuit held a debtor was entitled to discharge of his debt based on the untimeliness of the creditor's complaint regarding the dischargeability of debts. *In re Alton*, 837 F.2d at 459. In *Alton*, the creditor never received notice from the bankruptcy court of the creditors' meeting or of the last day to file complaints regarding dischargeability of debts because the debtor never listed him as a creditor on his bankruptcy petition. *Id.* at 458. However, the debtor sent him a copy of the notice of bankruptcy proceedings. *Id.*

The court acknowledged that the debtor's actions, whether inadvertent or intentional, were misleading. *Id.* at 459. The court found, however, that although "it was debtor's own conduct that caused [creditor] to miss the filing deadline," principles of equity did not warrant acceptance of a late-filed complaint. *Id.* at 458.

The *Alton* court observed:

> At the outset, we reject Byrd's equities argument. It is true that there are some disturbing aspects to this case. We are particularly troubled that debtor Alton did not include appellant Byrd on the list of creditors made out pursuant to 11 U.S.C. [§] 521 and filed with his bankruptcy petition; and yet, some three weeks later, debtor Alton, through his attorneys, sent Byrd notice of the petition for a Chapter 11 reorganization and notice of the automatic stay. Thus, debtor Alton, by his own actions, first deprived creditor Byrd of official notice at various stages of the proceedings pursuant to the Bankruptcy Code by omitting Byrd from the creditor list; and Alton then *put Byrd on actual notice* that a proceeding was pending by mailing the notice of the proceeding and of the stay. The actual notice deprived Byrd of making any later claim of nondischargeability of his claim on the ground of lack of knowledge. *See* 11 U.S.C. [§] 523(a)(3)(B). At the same time, the actual notice from the debtor might well have led creditor Byrd to believe that debtor Alton recognized Byrd as a creditor and had probably named Byrd on the creditor list in the bankruptcy proceeding as required by the Bankruptcy Code. Debtor Alton's actual notice to Byrd thus could have induced creditor Byrd to believe that Byrd would receive the normal notices from the court of the dates for the

15

creditors' meeting and the bar date for filing a complaint regarding the dischargeability of debts.

*Id.* at 458-59 (emphasis in original). Despite the debtor's conduct, the court held, "the time specifications set out in the Bankruptcy Code are sufficiently clear to have placed an obligation on creditor Byrd to follow the case and to take the timely action necessary to pursue his claim." *Id.* at 459.

Height's conduct appears far less blameworthy than that of Alton. The Eleventh Circuit's reliance on a creditor's duty of inquiry in *Alton* counsels against eliminating that duty in this case simply because Height had a hand in entering a misleading stipulated order.

### D. The bankruptcy court did not err in holding that equitable defenses were not available to Plaintiffs.

"The inability of a bankruptcy court to sua sponte extend the time in which to file dischargeability complaints [ ] does not prevent a bankruptcy court from exercising its equitable powers under 11 U.S.C. § 105(a) in accepting an untimely filed complaint." *In re Isaacman*, 26 F.3d at 632. Section 105(a) provides:

> The court may issue an order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

In *In re Maughan*, 340 F.3d at 344, the Sixth Circuit held that the filing deadline set by Rule 4007(c) is not jurisdictional, but rather "a statute of limitation-or simply a deadline-that is generally subject to the defenses of waiver, estoppel, and equitable

tolling." However, the bankruptcy court correctly held that principles of equitable tolling, equitable estoppel, and waiver did not save Plaintiffs' claim against Height. (Doc. # 1 at 9).

Bankruptcy courts consider five factors when deciding whether to equitably toll the running of the deadline for filing a complaint under Rule 4007(c): "'(1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement.'" *In re Maughan*, 340 F.3d at 344 (quoting *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988)). The bankruptcy court applied these factors and concluded equitable tolling did not apply because the delay was not due to the debtor's improper actions; it was due to Plaintiffs' failure to diligently pursue their rights. (Doc. # 1 at 6)*. See Diamonds v. Yashaya* (*In re Yashaya*), 403 B.R. 278, 286 (Bankr. E.D.N.Y. 2009) ("Equitable tolling is appropriate 'where the plaintiff had been misled or where evidence had been fraudulently concealed,' but not where 'one does not act diligently in protecting his legal rights.'" (quoting *Higgins v. Erickson* (*In re Higgins*), 270 B.R. 147, 158 (Bankr. S.D.N.Y. 2001))).

The Supreme Court has said, "[o]ne who fails to act diligently cannot invoke equitable principles to excuse their lack of diligence." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984). Plaintiffs did not act diligently: they failed to read the entire May 26 order, to heed the warning of the May 26 docket entry, or to inquire about the order's applicability to them in light of Rule 4007(c)'s strict and explicit requirement that the bankruptcy court only grant a general extension upon a showing of notice and

17

cause. The bankruptcy court did not abuse its discretion.

In addition, the bankruptcy court did not err in concluding that principles of equitable estoppel do not apply. Equitable estoppel applies when a plaintiff delays filing suit because he was lulled into believing he should delay as a result of the defendant's conduct. *In re Yashaya*, 403 B.R. at 286. The elements of equitable estoppel are: "(1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on the misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *Michigan Exp., Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004). The court held: "Contrary to the plaintiffs' assertion, there was no misrepresentation by the debtor. The stipulation was between the trustee and the debtor, only, and the order stated that it applied to the trustee only." (Doc. # 1 at 7). This finding is supported by the record; there was no abuse of discretion.

Lastly, the bankruptcy court did not abuse its discretion by concluding that the debtor did not waive his right to object to the timeliness of the complaint. "Waiver requires an unambiguous and intentional relinquishment of a known right." *Airlines Reporting Corp. v. Mascoll* (*In re Mascoll*), 246 B.R. 697, 707 (Bankr. D.D.C. 2000) (citing *United States v. Olano*, 507 U.S. 725, 733 (1993)). The sixth paragraph of the stipulation says the deadline extensions apply only to the trustee. Thus, Height did not unambiguously and intentionally give up his right to object to a creditor's complaint filed after the original bar date.

## V. CONCLUSION

The Order of the bankruptcy court dismissing Plaintiffs' Complaint is **AFFIRMED**.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: April 19, 2011

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on April 19, 2011.

s/Carol A. Pinegar
Deputy Clerk